# Rosenblatt et ux. v. Potential Building and Loan Association

*M. Jacob Markmann* and *A. J. Nydick*, for plaintiffs.
*Harry Cohen*, for defendant.

GORDON, JR., J., April 8, 1933.—This is a rule for judgment for want of a sufficient affidavit of defense. The plaintiffs aver in their statement of claim that on April 7, 1931, they gave notice to the Potential Building and Loan Asso-

ciation of their desire to withdraw shares held by them in that association; that on May 7, 1931, the notice of withdrawal became effective; and that the value of the shares at that time was $2475. The plaintiffs also aver that on November 30, 1931, the association issued a statement showing that it was carrying on its books as a liability $45,922.86 on account of canceled or withdrawn shares, in which the plaintiffs' were included at their full value; that on February 26, 1932, one year after the withdrawal of the plaintiffs from the association, it gave notice to them of an intended merger with another association of the same name, and that on March 8th of that year the merger was consummated. For convenience in distinguishing between the two associations, the original association in which the plaintiffs owned the shares will hereafter be referred to as the old association, and the association into which it merged, the defendant in the present suit, as the new association. It further appears from the statement that on March 2, 1932, six days before the merger, the plaintiffs assigned their interest in the withdrawn shares to the Central Penn National Bank as collateral for a loan, of which notice was given to and accepted by the old association; that on September 16, 1932, the Central Penn National Bank, having received payment of its loan, reassigned the shares to the plaintiffs, the defendant accepting the reassignment; and that, demand for payment of the value of their shares having been refused by the defendant, the plaintiffs then brought this action to recover the amount thereof.

In answer to the allegations of the statement, the affidavit of defense avers that "prior to March, 1931," which was before the date of the withdrawal of the plaintiffs from the old association, it was insolvent. In making this naked averment of insolvency, which is a mere conclusion from ascertainable facts, the defendant fails either to state what the actual value of the plaintiffs' shares was at that time, or to disclose any facts from which insolvency could be inferred, or even to declare generally to what extent it was insolvent. This is clearly an insufficient allegation of insolvency, and, under the rules of pleading, amounts to an admission that the value of the shares was as pleaded by the plaintiffs. The plaintiffs aver a definite value as to their shares on the date of withdrawal, to wit, $2475, and they have a right to an equally definite answer to this averment, upon which they can ask for such judgment on all the pleadings as they might be lawfully entitled to. This rule is particularly applicable to the present case, since the affidavit of defense admits that, as late as November, 1931, the old association recognized and acknowledged the plaintiffs' claim for the full value of the shares by carrying them on its books as a liability, at the value of $2475 pleaded by the plaintiffs. Therefore, in so far as the affidavit of defense attempts to interpose the defense of insolvency of the old association at the date of withdrawal, it is clearly insufficient, and the plaintiffs are entitled to judgment on the pleadings, if the value of the shares at the date of withdrawal is the proper measure of recovery.

As a further defense, however, the affidavit avers that at the date of the merger with the new association, March 8, 1932, the old association was insolvent to the extent of fifty-five per cent. of the book value of its assets; that the merger was effected at the direction of the secretary of banking; that the defendant new association had no assets of its own before the merger, all of its assets having been derived from the old association; and that, because of a progressive shrinkage in the value of its assets from the date of the merger to the date of the suit, the value of the plaintiffs' shares, if it is to be calculated upon the basis of the value of the assets of the new association as of the latter date, would be but ten per cent. of their value on the date of the plaintiffs' withdrawal from the old association in May, 1931.

Under the foregoing facts disclosed by the pleadings, we are of opinion that the plaintiffs are entitled to judgment for $2475, the value of their shares on the date of their withdrawal from the old association. A merger of two or more associations works their dissolution, and even non-assenting shareholders, who are in a less favorable position than withdrawing shareholders, the latter of whom are not even members of the association at the time of a proposed merger, and, therefore, can neither assent to nor dissent from it, cannot be compelled to become members of the merged organization: Malamut v. Wilson B. & L. Ass'n, 16 D. & C. 187. Hence, as to withdrawn shareholders of the old association, the rule that requires a merging association to put aside before the merger sufficient of its assets to pay the claims of such shareholders is especially important; for their rights become fixed on the date of their withdrawal, and thereafter they cannot be charged with accruing losses of the association since they pay no dues and are not entitled to share profits. This being so, for the new association arbitrarily and wrongfully to take, and deal with as its own, property belonging to one not a member of the new partnership would constitute a clear misappropriation of such property, for which the new association would be liable as for an unlawful conversion. Such a conversion would create a debt from the new association to the former shareholder of the old, whose property is, without his consent, wrongfully seized by the new association and subjected to all the risks of the latter's business speculations. To hold that withdrawn shareholders of the old association could not recover from the merged association the full extent of their claims against the former would work one of two obvious injustices: either that of denying their undoubted right to receive their share of the assets of the old association before the merger is consummated, or that of subjecting their property against their will to the risks of the business operations of an organization to which they are strangers and over which they have no control, while at the same time denying to them the advantages of sharing in any profits that might be made should the business turn out successful. Such a result would be abhorrent to every principle of justice and equity.

The plaintiffs' recovery must, therefore, be measured by the extent of their right against the old association, rather than by the shrunken value of their property after the new association had wrongfully dealt with it as its own. To what, therefore, are the plaintiffs entitled—the full value of their shares at the date of withdrawal, or their value as of the date of the merger, which is averred to be but forty-five per cent. of their former value? While it has been held in recent decisions of our higher courts that a withdrawing shareholder is not entitled to judgment for the full value of his shares at the date of withdrawal, if the payment of such value would produce insolvency, no case has been brought to our attention which goes so far as to hold that, merely because a withdrawing shareholder may not be entitled presently to recover the full withdrawal value of his shares, he cannot recover immediately whatever may be their actual value. If, for instance, the full withdrawal value of a share is $100 and the actual value only $50, we do not understand the recent decisions of the Supreme Court denying the shareholder's right to recover an immediate judgment for $100 on the ground of the actual or theoretical insolvency of the association to imply that it would also hold that he is not entitled to recover the $50. Appraising the interests of all the shareholders on the basis of actual value, there can never be a true insolvency so long as the shares have any value, even though there may be a technical insolvency in the sense that the shareholder's interest does not equal his contribution to capital. A judgment for the actual value of a withdrawn share could not put the association in any worse posi-

tion, and to refuse it would deny to the shareholder the undoubted right to withdraw, which the by-laws give him, and which is one of the terms of the contract under which he becomes a member of the association. The rights of withdrawing shareholders have been thoroughly considered by this court in the opinion of my brother Stern in the recent case of Hirsch v. Uniform B. & L. Ass'n, 17 D. & C. 677, to which reference is made for a comprehensive and persuasive, discussion of this subject. We, therefore, conclude that the correct measure of the plaintiffs' recovery is the value of their shares at the date of withdrawal, which is admitted by the pleadings to be $2475.

It may be that, because of subsequent shrinkage in the value of all its assets, this defendant will suffer some hardship and be placed in a more precarious condition in respect to its actual insolvency, by being compelled to pay the full value of the shares. The responsibility for this result, however, lies upon the defendant itself, which wrongfully appropriated the plaintiffs' share of the assets of the old association, with knowledge of their claim, and subjected that property to the further risks of its own business. It could have forestalled this embarrassment by refraining from taking over the plaintiffs' property when the merger was consummated; and, having failed in its duty at that time, we see no reason to permit it to take advantage of its own wrong to the injury of the plaintiffs.

For these reasons, we are of opinion that the affidavit of defense is insufficient, and judgment is accordingly entered for the plaintiffs for $2475, with interest from May 7, 1931. The prothonotary will compute the interest and add it to the principal of the judgment.